# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tony Dejuan Jackson, | Case No. 23-cv-3827 (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION AND ORDER** |
| Paul Schnell, Commissioner of Minnesota Department of Corrections; Jo Ann Erickson, Education Director Stillwater Close Custody Level Four Correctional Facility; and William Bolin, Warden Stillwater Close Custody Level Four Correctional Facility, | |
| Defendants. | |

This matter is before the Court on Defendants Paul Schell's, Jo Ann Erickson's, and William Bolin's Motion to Dismiss Plaintiff Dejuan Jackson's First Amended Complaint. (Doc. 45). Also before the Court are Mr. Jackson's third Motion to Amend or Supplement Pleadings (Doc. 73); Motion for Preliminary Injunction (Doc. 74); and Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures (Doc. 40). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons explained below, the Court recommends that Mr. Jackson's third Motion to Amend or Supplement Pleadings (Doc. 73) be denied as futile; Mr. Jackson's Motion for Preliminary Injunction be denied (Doc. 74); Defendants' Motion to Dismiss (Doc. 45) be granted; and Mr. Jackson's First Amended Complaint (Doc. 32) be dismissed

with prejudice. Additionally, the Court denies Mr. Jackson's Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures (Doc. 40).

## BACKGROUND

Mr. Jackson is incarcerated in Minnesota Correctional Facility-Stillwater ("MCF-STW") and has filed many civil rights cases over the years seeking to address the conditions of his confinement in Minnesota prisons.[1] On December 18, 2023, Mr. Jackson filed a pro se complaint under 42 U.S.C. §1983, against Defendants Paul Schnell and Jo Ann Erickson. (*See generally* Doc. 1.) On March 21, 2024, Mr. Jackson filed an Amended Complaint ("First Amended Complaint') as of right, adding Defendant William Bolin. (*See generally*, Doc 32.)[2]

### Mr. Jackson's pleadings and Defendants' Motion to Dismiss.

The allegations in Mr. Jackson's First Amended Complaint fall into four main categories. First, he alleges that his access to the internet has been restricted and limited in Minnesota Department of Corrections ("DOC") facilities and by DOC library policies; second, he takes issue with MCF-STW's inmate grievance process; third, he complains that his access to the courts has been unconstitutionally thwarted; and fourth, he claims that

---

[1] Mr. Jackson is a frequent litigant in this district. *See e.g.*, *Jackson v. Dayton*, No. 17-cv-0880; *Jackson v. FindJodi.com, Inc.*, 21-cv-1777; *Jackson v. Schnell*, No. 22-cv-0965; *Jackson v. Simon*, 22-cv-3034, No. 22-cv-3034; *Jackson v. Schnell*, No. 22-cv-3074; *Jackson v. Schnell*, No. 23-cv-0168; *Jackson v. Schnell*, No. 23-cv-0366. Indeed, one of his claims in *this* action is that Defendants are intentionally retaliating against him for filing another federal case, *Jackson v. Schnell et al.*, No. 22-cv-3074 (KMM/DLM). The court dismissed that case due to Mr. Jackson's failure to exhaust his administrative remedies before filing the lawsuit. *Jackson*, No. 22-cv-3074 (Docs. 108, 115).)

[2] For reasons explained below, Mr. Jackson's First Amended Complaint is the operative complaint in this case. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).

a Minnesota Department of Health ("MDH") water testing report was not properly made available to him. (*See generally*, Doc. 32.) As relief, Mr. Jackson has requested that his case be designated a class action lawsuit, that prospective injunctive relief be granted, and that he be awarded $1.5 million in punitive damages against each Defendant. (*Id.* ¶¶ 126-28.)

Defendants moved to dismiss Mr. Jackson's First Amended Complaint on April 29, 2024, for failure to meet pleading requirements under Federal Rule of Civil Procedure 8; failure to state a cognizable claim for relief under Fed. R. Civ. P. 12(b)(6); and failure to adequately allege Defendants' direct and personal involvement in any unconstitutional conduct. (*See generally*, Docs. 45 ,46.)

On July 9, 2024, Mr. Jackson filed a second Motion to Alter or Supplement Pleadings, and a Motion to Add Parties. (Docs. 69, 70.) The Court denied both motions. (Doc. 72.) Then, on December 20, 2024, Mr. Jackson filed a third Motion to Amend or Supplement Pleadings. (Doc. 73.) In his most recent motion to amend, Mr. Jackson seeks to add claims pertaining to alleged events which occurred on September 19, 2024, at MCF-STW. (*See* Doc. 73-1 ¶¶ 11, 17-23.) Defendants oppose Mr. Jackson's motion, arguing that amending his complaint would be futile and should therefore be denied. (*See generally* Doc. 76.)

***Mr. Jackson's Motion for Preliminary Injunction.***

Also before the Court is Mr. Jackson's most recent Motion for Preliminary

3

Injunction (Doc. 74).[3] In this motion, Mr. Jackson alleges that Defendants are interfering with his access to courts, his "right to free flow of mail," his "right to be present when [his] legal mail is opened," and his participation in post-secondary education. (*Id.* at 2.) He asks the Court to issue an order "enjoining the [D]efendants . . . from ongoing censorship and suppression [of] [Mr.] Jackson and all other similarly situated incarcerated persons housed in Minnesota State Prison facilities statewide" and ensuring that Defendants "are restrained from [committing] the Constitutional violations alleged in the complaint[.]" (*Id.* at 6.) Defendants argue that the Court should deny the motion because Mr. Jackson cannot show that he is under threat of irreparable harm and because his allegations in the preliminary injunction motion are unrelated to the operative complaint. (Doc. 78.)

***Mr. Jackson's Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures.***

In addition to Mr. Jackson's various pleadings and motions for preliminary injunction, he has also filed a Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures (Doc. 40). Mr. Jackson asks the Court to refer his claims for criminal prosecution due to Defendants' alleged tampering with his mail in violation of U.S.C. § 1512(b)(2)(c). (*Id.* at 2.) Defendants have filed no response to this motion.

The Court considers each motion below.

---

[3]This is not the first preliminary injunction motion Mr. Jackson has filed in this case. He filed a similar motion on February 22, 2024 (Doc. 11), which the court denied (Doc. 57.)

# ANALYSIS

## I.    MR. JACKSON'S THIRD MOTION TO AMEND OR SUPPLEMENT PLEADINGS SHOULD BE DENIED.

The Court first addresses Mr. Jackson's third Motion to Amend or Supplement Pleadings (Doc. 73). Defendants argue that the Court should deny Mr. Jackson's motion because his proposed amendments fail to meet Fed. R. Civ. P. 8 pleading requirements, fail to allege facts that state a valid claim for relief, and fail to adequately allege Defendants' direct and personal involvement in any unconstitutional conduct. (*See generally*, Doc. 76.) In other words, Defendants argue that Mr. Jackson's proposed amendments are futile because they cannot survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

"When a plaintiff moves to amend a complaint after a motion to dismiss has been filed, as [Mr. Jackson] has done here, the court must first address the motion to amend." *Jones v. Capella Univ.*, 706 F. Supp. 3d 822, 826 (D. Minn. 2020), *aff'd*, 849 F. App'x 616 (8th Cir. 2021) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)). Although courts "should freely give leave [to amend a complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2), there is no absolute right to amend a pleading, "even under this liberal standard," *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A "court may deny leave to amend 'if there are compelling reasons such as . . . futility of the amendment.'" *Jones*, 706 F. Supp. 3d at 826 (quoting *Reuter v. Jax Ltd.*, 711 3d 918, 922 (8th Cir. 2013)).

"An amendment is futile when it could not survive a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)). To survive a Rule

12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Mr. Jackson claims, in his proposed amendments, that on September 19, 2024, MCF-STW officials locked down the prison and required him to leave the education department and return to his cell. (Doc. 73-1 ¶ 17.) He alleges that the lockdown was the result of correctional officers' exposure to fentanyl and that the "[DOC] Commissioner indicated security threat organizations are responsible for the . . . drug smuggling" and are being assisted by individuals inside" DOC facilities. (*Id.* ¶¶ 18-19.) Mr. Jackson claims that correctional officers smuggled drugs into the prison, yet the correctional officer labor union blamed the drug smuggling on the DOC mail system. (*Id.* ¶¶ 20-21.) He alleges the lockdown lasted four days and during that time he was unable to shower, access clean water, or communicate with family or friends. (*Id.* ¶ 20.) Mr. Jackson also claims that because of a change in the DOC's mail policy he "will not know if and when the Federal or State Courts have sent [him] legal documents or court orders through the United States Postal Service." (*Id.* ¶ 22.) Finally, Mr. Jackson asks the Court to take notice of his allegations from previous lawsuits. (*Id.* ¶¶ 11, 23.)

The Court agrees with Defendants that Mr. Jackson's proposed amendments to his First Amended Complaint cannot survive a motion to dismiss and are therefore futile. Mr. Jackson's amendments fail to state a claim for relief, fail to identify which of the named Defendants is responsible for any of the alleged conduct beyond mere conclusory statements, and fail to establish any named Defendant's direct and personal involvement in any alleged violation. Simply put, Mr. Jackson's proposed amendments fail to tie any of the named Defendants to a new claim, clarify how any Defendant may have violated his constitutional rights, or explain how any of the Defendants were involved in any unconstitutional conduct.[4]

The Court therefore finds that Mr. Jackson's proposed amended complaint fails to state a claim to relief that is plausible on its face. Accordingly, the Court recommends that his third Motion to Amend or Supplement Pleadings (Doc. 73) be denied for futility.

## II.    MR. JACKSON'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED.

The Court next turns to Mr. Jackson's most recent Motion for Preliminary Injunction (Doc. 74). In his motion, he asks the Court to issue an order "enjoining the [D]efendants . . . from ongoing censorship and suppression [of] [Mr.] Jackson and all other similarly situated incarcerated persons housed in Minnesota State Prison facilities statewide" and ensuring that Defendants "are restrained from [committing] the Constitutional violations alleged in the complaint[.]" (*Id.* at 6.) As justification for his

---

[4] The Court further notes that the conduct alleged in Mr. Jackson's amendments all occurred in September of 2024, long after the filing of the instant action.

motion, he claims that Defendants are interfering with his access to courts, his "right to free flow of mail," his "right to be present when [his] legal mail is opened," and his participation in post-secondary education. (*Id*. at 2.) According to Mr. Jackson, if the Court fails to grant his motion, he "will suffer irreparable harm" to "his First Amendment Constitutional . . . access to the courts" due to missed filing deadlines. (*Id.* at 5.) Defendants oppose Mr. Jackson's motion, arguing that he has not set forth reasons that would merit a grant of such extraordinary relief. (Doc. 78.)

A preliminary injunction is issued to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir. 1981) (en banc)). In determining whether a preliminary injunction should issue, courts should consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Dataphase*, 640 F.2d at 114). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Id.* Additionally, a preliminary injunction is an extraordinary remedy, and "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Id.* (internal quotation marks omitted).

No threat of irreparable harm appears present on this record. *Accord Fiorito v. Fikes*, No. 22-cv-0512 (WMW/HB), 2022 WL 2276734, at *3 (D. Minn. May 23, 2022), *R. & R. adopted*, 2022 WL 2275866 (D. Minn. June 23, 2022). Mr. Jackson claims that without a preliminary injunction he will suffer irreparable harm due missed filing deadlines. But the Court notes that there are no pending filing deadlines for Mr. Jackson to possibly miss. Presently before the Court is Defendants' Motion to Dismiss Mr. Jackson's First Amended Complaint. That motion has been fully briefed by all parties and no pending filing deadlines exist. Because there are no filing deadlines to miss, Mr. Jackson cannot suffer irreparable harm by missing them. As a result, the Court finds that Mr. Jackson has failed to allege anything in his motion that would suggest an imminent risk of irreparable harm due to missed filing deadlines. In any event, should Mr. Jackson's First Amended Complaint survive Defendants' Motion to Dismiss, he is free to move the Court for an extension of any missed deadlines in the future.

Accordingly, the Court recommends that Mr. Jackson's Motion for Preliminary Injunction (Doc. 74) be denied.

### III.    MR. JACKSON'S FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO MEET PLEADING REQUIREMENTS AND FAILURE TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

Having decided that Mr. Jackson's third Motion to Amend or Supplement Pleadings and Motion for Preliminary Injunction should be denied, the Court now turns to Defendants' Motion to Dismiss Mr. Jackson's First Amended Complaint (Doc. 45).

Mr. Jackson alleges that DOC Policies 303.040, *Use of Electronic Equipment by Offenders/Residents*; 204.045, *Library*; and Minn. Stat. § 243.556, violate his First

9

Amendment rights because they do not allow for his unfettered access to the internet. (Doc. 32 ¶¶ 5-10, 20-21, 89-110.) He further claims that these policies are "part of a systemic pattern of discriminatory culture" and that Minn. Stat. § 243.556 is applied in a discriminatory way. (*Id.* ¶¶ 19-20.) Mr. Jackson also claims that these internet restrictions "unnecessarily restrict [his] access to much needed electronic equipment needed to produce legal document[s] or do any category of legal work." (*Id.* ¶ 21.)

Next, Mr. Jackson contends that after a new warden was assigned to MCF-STW he began having problems accessing the new chain of command to communicate his grievances. (*Id.* ¶¶ 29-33.) Mr. Jackson claims that a "new" chain of command operated "as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved incarcerated persons like the Plaintiff Jackson." (*Id.* ¶ 30.) Mr. Jackson also alleges that his access to courts has been impeded because on Monday, March 11, 2024, he picked up legal mail from the Minnesota Attorney General's Office that was postmarked on March 4. (*Id.* ¶¶ 41-42.) Additionally, Mr. Jackson alleges that he gave outgoing legal mail to a security officer on Sunday, March 3, 2024, and his mail did not leave the facility until Tuesday, March 5. (*Id.* ¶ 45.) He alleges that this delay interfered with a court-ordered deadline. (*Id.*)

Finally, Mr. Jackson claims that an MDH water test report was not made available to him. (*Id.* ¶¶ 49-52.) According to Mr. Jackson, he was instead provided only with a memorandum summarizing the MDH report and advised that the full report was available on MDH's public website. (*Id.* ¶¶ 49-50; Doc. 38 at 19.) For all this, Mr. Jackson asks the Court to designate his case as a class action lawsuit, for unspecified prospective injunctive

relief, and for an award of $1.5 million in punitive damages against each Defendant. (*Id.* ¶¶ 126-28.)

Defendants argue that Mr. Jackson's First Amended Complaint should be denied in its entirety for failing to meet the pleading requirements under Fed. R. Civ. P. 8, failing to state a cognizable claim for relief under Fed. R. Civ. P 12(b)(6), and failing to adequately allege Defendants' direct and personal involvement in any unconstitutional conduct. (*See generally*, Docs. 45, 46.) Defendants also argue that Mr. Jackson is not entitled to the relief he seeks.

A civil complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6), requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678 (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1026 (D. Minn. 2015) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts the

11

factual allegations as true and views them most favorably to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

The Court notes that Mr. Jackson is acting *pro se* in this matter. When assessing the sufficiency of a complaint by a *pro se* plaintiff, courts should apply "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); citing Fed R. Civ. P. 8(f)). "If the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, a *pro se* plaintiff such as Mr. Jackson "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). But "in fulfilling its duty to liberally construe a civil-rights pleading," a court need not "divine the litigant's intent and create claims that are not clearly raised," nor "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004) (discussing *Nickens v. White*, 536 F.2d 802, 803-04 (8th Cir. 1976)). Courts are also not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

Here, Mr. Jackson's 48-page First Amended Complaint fails to allege any actual cause of action that entitles him to relief. He has failed to identify how the named Defendants' alleged misconduct was unlawful, and at the same time has failed to name as

12

defendants multiple DOC staff whom he accuses of misconduct. This sort of scattershot pleading fails to meet Rule 8's requirement to allege a short and plain statement of his claims showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant.") As a result, Mr. Jackson has failed to plead sufficient factual allegations "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Even considering the claims Mr. Jackson appears to raise based on the allegations in his complaint, the Court finds that Mr. Jackson's First Amended Complaint (Doc. 32) should be dismissed in its entirety for failure to meet pleading requirements under Fed. R. Civ. P. 8, and failure to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6). The Court addresses the individual claims Mr. Jackson appears to raise below.

**A.    Mr. Jackson fails to state a plausible First Amendment claim.**

The Court first addresses Mr. Jackson's claim that a Minnesota Statute and DOC policy restricting internet use by people in prison violate his First Amendment rights. Mr. Jackson claims that  Minn. Stat. § 243.556 and DOC Policies 303.040, *Use of Electronic Equipment by Offenders/Residents*, and 204.045, *Library* "are being used in combination by Defendants to both restrict and criminalize" his "use of computers and other electronic devices." (Doc. 32 ¶¶ 5-10, 20-21, 89-110.) Minn. Stat. § 243.556 states, "[n]o adult inmate in a state correctional facility may use or have access to any Internet service or online

service, except for work, educational, and vocational purposes approved by the commissioner." *Id.*, subd. 1. And DOC Policy 303.040 *Use of Electronic Equipment by Offenders/Residents* states in relevant part, "[o]ffenders/residents are not permitted access to the Internet, unless approved by the commissioner or designee for work, educational, and vocational purposes per Minn. Stat. § 243.556." DOC Policy 303.040. The policy's stated purpose is "[t]o establish controls that ensure facility security and the protection of the public from the misuse of electronic equipment by offenders/residents." (*Id.*)

Incarcerated individuals are not categorically stripped of their First Amendment rights. Rather, "a prison inmate retains those First Amendment rights that are not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Yang v. Missouri Dep't of Corr.,* 833 F.3d 890, 894 (8th Cir. 2016) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). These rights include communicating outside of prison, although such a right is nonetheless subject to "regulation that protects legitimate governmental interests." *Id.* When a prison regulation limits a person's ability to communicate outside of the prison, the regulation is nonetheless valid if it is "reasonably related to legitimate penological objectives." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89, 99 (1987)) (further citations omitted). When determining whether a regulation is reasonably related to legitimate objective, courts consider

> (1) whether the regulation is rationally connected to a legitimate and neutral governmental interest; (2) whether the inmate has an alternative means of exercising the constitutional right; (3) the impact accommodating the inmate's asserted right would have on prison staff, prisoners, and resources; and (4) whether ready alternatives to the regulation exist.

*Id.* (citing *Turner*, 482 U.S. at 89-91). It is Mr. Jackson's burden to prove that the DOC's regulation is unreasonable. *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).Based on these factors, the Court concludes that the restrictions on Mr. Jackson's access to the internet—and thus ability to communicate outside of the prison—are reasonably related to legitimate penological objectives.

First, the restrictions placed on Mr. Jackson's access to the internet are related to the legitimate governmental interest in security. Second, even under these restrictions, Mr. Jackson maintains the ability to exercise his First Amendment rights because he may access the internet for approved purposes such as work or school. Third, requiring DOC officials to monitor unfettered access to the internet would strain already limited DOC resources and put the safety and security of the facility at risk. Finally, Mr. Jackson has not demonstrated that a ready alternative to the DOC's internet access policy exists, other than his request for essentially unfettered access.

Accordingly, the Court finds that Mr. Jackson has failed to allege facts showing that the regulations limiting his access to the internet are unreasonable, and thus has failed to state a plausible First Amendment claim.

**B.    Mr. Jackson fails to state a plausible Fourteenth Amendment claim.**

The Court next addresses Mr. Jackson's claim that restrictions on his access to the internet violate his Fourteenth Amendment Equal Protection rights (Doc. 32 ¶¶ 10, 19-20). Mr. Jackson alleges that DOC policies are "part of a systemic patter of discriminatory culture." (Doc. 32 ¶ 19.) The Fourteenth Amendment's Equal Protection clause prohibits states from denying any person equal protection of the law, directing that "all persons

similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982). The threshold question when analyzing an equal protection claim is whether the plaintiff has stated facts in his complaint alleging that he is being treated differently than other similarly situated individuals. *See Klinger v. Dep't of Corr.,* 31 F.3d 727, 731 (8th Cir. 1994) ("Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her.")

Here, Mr. Jackson's claim fails at the first step. Although Mr. Jackson claims discrimination, he has failed to allege facts showing that he is experiencing different internet-access restrictions than other similarly situated inmates. Thus, the Court finds that Mr. Jackson has failed to state a cognizable Equal Protection claim.

**C.    Mr. Jackson fails to state a plausible access-to-courts claim.**

The Court turns now to Mr. Jackson's claim that his access to courts has been improperly restricted by various alleged delays at the MCF-STW mailroom (Doc. 32 ¶¶ 41-42, 45). To state a plausible access-to-courts claim, Mr. Jackson must allege facts showing that Defendants "acted with some intentional motivation to restrict [his] access to the courts." *Scheeler v. City of St. Cloud, Minn.,* 402 F.3d 826, 830 (8th Cir. 2005) (citing *Whisman v. Rinehart*, 119 F.3d 1303, 1312-13 (8th Cir. 1997) (stating that right-to-access cause of action requires some proof of government action "designed" to prevent access to the Courts); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986). He must also plausibly assert that he "suffered an actual injury to pending or

contemplated legal claims" *Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir. 1996) (citing

*Lewis v. Casey*, 518 U.S. 343, 348 (1996)).

Here, Mr. Jackson has failed to plead any facts showing Defendants' personal and

direct involvement in any alleged mail delay. Nor has Mr. Jackson plead any facts showing

that he was prevented from filing documents in this case or any of his other many cases.

To the contrary, Mr. Jackson is prolifically litigious, and has successfully filed legal

documents into this case and many others. Accordingly, the Court finds that Mr. Jackson

has failed to state a plausible access-to-courts claim.

**D.    Mr. Jackson fails to state a plausible retaliation claim.**

The Court next turns to Mr. Jackson's claim that DOC staff retaliated against him.

Mr. Jackson generally asserts that various Defendants and DOC staff have retaliated

against him for filing civil rights cases over conditions within MCF-STW. (Doc. 32 ¶¶ 22,

25, 32, 58, 111.) In order to bring a plausible First Amendment retaliation claim under §

1983, Mr. Jackson must plead facts showing that "(1) he engaged in a protected activity,

(2) officers took adverse action against him that would chill a person of ordinary firmness

from continuing in the activity, and (3) the adverse action was motivated at least in part by

the exercise of the protected activity." *Waters v. Madson*, 921 F.3d 725, 741 (8th Cir. 2019)

(quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)) (cleaned up).

Mr. Jackson has failed to state a plausible retaliation claim. Even if his complaint is

liberally construed to assert that his protected activity was filing civil rights actions, he has

not alleged which Defendants allegedly took an adverse action against him, or what the

adverse action was. Beyond blanket conclusory statements that he was a victim of

17

retaliation, Mr. Jackson has failed to assert any cognizable retaliation claim in his First Amended Complaint.

**E.    Mr. Jackson fails to state a plausible conspiracy claim.**

The Court next addresses Mr. Jackson's claim that Defendants conspired to deprive him of his constitutional rights (Doc. 32 ¶¶ 16, 19, 24, 88, 102, 113, 121, 123). To state a plausible conspiracy claim under § 1983, Mr. Jackson must plead facts alleging , "(1) that the [Defendants] conspired with others to deprive [him] of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured [him]." *Johnson* v. *City of Leadington,* No. 4:19-cv-02282-SEP, 2020 WL 6117944, at *8 (E.D. Mo. Oct. 16, 2020) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)).

As an initial matter, Mr. Jackson is required to show that he was deprived of a constitutional right. *Id*. As explained in the sections above, Mr. Jackson has failed to plausibly state a single constitutional violation. Because each of his substantive claims fails, his conspiracy claim also necessarily fails. Accordingly, the Court finds that Mr. Jackson has failed to state a plausible conspiracy claim.

**F.    Mr. Jackson fails to allege any direct and personal involvement by the named Defendants.**

Under § 1983, individual liability may be imposed with respect to state officials who are directly and personally involved in a deprivation of constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 376-77 (1976). But a prison official's general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement

necessary for individual liability. *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983). To establish supervisory liability, a plaintiff must show that a defendant directly participated in the constitutional violation or was deliberately indifferent in failing to correct an unconstitutional practice. *Id.*; *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). Mere negligence in failing to detect or prevent misconduct is insufficient. *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994). Nor can a plaintiff rest on bald allegations that a defendant knew or should have known of a constitutional violation. *Boyd v. Knox*, 47 F.3d 966, 968 n.1 (8th Cir. 1995).

Here, Mr. Jackson has named as Defendants DOC Commissioner Paul Schnell, MCF-STW Warden William Bolin, and Education Director Jo Ann Erickson, but he has failed to allege any facts showing that any of these named Defendants was directly involved in any alleged misconduct beyond mere conclusory allegations. (*See, e.g.* Doc. 32 at 42-46.) And the fact that these Defendants may occupy supervisory roles is insufficient to establish liability under § 1983. A claim against Defendants could only proceed on facts showing that they were personally involved in the actionable misconduct, and here Mr. Jackson's allegations are insufficient. As a result, the Court finds that Mr. Jackson has failed to state a plausible claim against any of the named Defendants.

**G.    Mr. Jackson is not entitled to the relief he seeks.**

Along with his litany of claims, Mr. Jackson requests several forms of relief in his First Amended Complaint. First, he asks that his case be designated as a "class action" lawsuit. (Doc. 32 ¶ 126.) Second, he seeks "Prospective Injunctive Relief for continuing systematic violations of Federal Law and the United States Constitution; Preliminary and

Permanent Injunctions, Temporary restraining orders and Declaratory Relief regarding ongoing constitutional violations as described in the Amended Civil Complaint." (*Id.* ¶ 127.) Finally, he asks the Court to award him, "$1.5 million . . . from each defendant in punitive damages." (*Id.* ¶ 128.) For the reasons explained below, Mr. Jackson is not entitled to such relief.

**1.    Mr. Jackson's request for class action designation should be denied because he his a pro se plaintiff.**

Mr. Jackson asks the Court to designate his case a "class action" lawsuit. (Doc. 32, ¶ 126.)[5] But, Mr. Jackson is a *pro se* plaintiff who is representing himself without help from a lawyer, and "*pro se* litigants can never represent the rights, claims and interests of other parties in a class action lawsuit[.]" *Jackson v. Dayton*, No. 17-cv-0880 (WMW/TNL), 2017 WL 10250625, at *1 (D. Minn. July 14, 2017) (quoting *Perkins v. Holder*, 2014 WL 755378, at *5 n.8 (D. Minn. 2014); citing *United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994)), *R. & R. adopted*, 2018 WL 4473407 (D. Minn. Jan. 8, 2018). Accordingly, his request for class action designation should be denied.

**2.    Mr. Jackson is not entitled to injunctive relief.**

Mr. Jackson also requests injunctive relief from the Court. (Doc. 32 ¶ 127.) But under the Prison Litigation Reform Act ("PLRA"), he is not entitled to injunctive relief. The PLRA limits the injunctive relief a court may order for incarcerated individuals, and provides in relevant part that "prospective relief in any civil action with respect to prison

---

[5] Defendants do not address Mr. Jackson's request for class-action designation in their filings.

conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Before granting prospective relief, a court must find such relief to be "narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct that violation." *Harvey v. Schoen,* 245 F.3d 718, 720 (8th Cir. 2001) (citing 18 U.S.C. § 3626(a)(1)(A)); *see also Miller v. French*, 530 U.S. 327, 333 (2000).

Here, Mr. Jackson seeks "injunctive relief for continuing systemic violations of Federal Law and the United State Constitution." (Doc. 32, ¶ 127.) However, he fails to state the nature of such relief or to connect any prospective relief to any specific alleged misconduct by Defendants beyond general claims of constitutional violations and violations of federal statute. Because the requested relief is not narrowly drawn, it falls outside the relief available under the PLRA. Thus, Mr. Jackson is not entitled to the injunctive relief he seeks.

**3.    Eleventh Amendment immunity bars damages against Defendants in their official capacities.**

Defendants argue that Eleventh Amendment sovereign immunity bars Mr. Jackson's damages claims against Defendants in their official capacities. A suit against a public employee—such as Defendants—in their official capacity is merely a suit against the public employer. *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). Therefore, Mr. Jackson's suit against Defendants in their official capacity is in fact a suit against the State of Minnesota—Defendants' public employer.

21

"The Eleventh Amendment prohibits an action against a state unless it has unequivocally consented to suit or Congress has abrogated the state's immunity for a particular federal cause of action." *Kleiber v. Minnesota Dep't of Corr,*, No. 23-cv-311 (PJS/LIB), 2023 WL 6393219, at *4 (D. Minn. Aug. 29, 2023), *R. & R. adopted,* 2023 WL 6392298 (D. Minn. Oct. 2, 2023) (citing *Kimel v. Florida Bd. Of Regents,* 528 U.S. 62, 72-73 (2000) (further citations omitted). Because Mr. Jackson has brought official capacity claims for monetary damages against Defendants Schnell, Erickson, and Bolin, his official capacity claims are in fact claims against Defendants' public employer: the State of Minnesota. But the State of Minnesota is entitled to Eleventh Amendment immunity against federal claims Mr. Jackson brings under § 1983. *See Johnson v. MCF-St. Cloud,* No. 22-cv-1299 (JRT/BRT), 2022 WL 17723807, at *2 (D. Minn. Nov. 10, 2022) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995)), *R. & R. adopted sub nom. Johnson v. MCF-St. Cloud,* 2022 WL 17721510 (D. Minn. Dec. 15, 2022).

Because the State of Minnesota has not waived its sovereign immunity, the Court lacks subject matter jurisdiction over Mr. Jackson's claims seeking monetary damages against Defendants in their official capacity. Accordingly, the Eleventh Amendment bars Mr. Jackson's claim for monetary damages against Defendants and his claims should be dismissed.

**4.    Section 1983 also bars damages against Defendants in their official capacities.**

Section 1983 allows federal courts to hear complaints about deprivations of civil liberties, but not for claims alleging that a state has caused the deprivation of those rights.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Defendants as government officials, can be sued only in their official capacity to the extent that the State of Minnesota can be sued. *See Monell v. Dep't of Soc. Servs. Of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978) (stating that official-capacity suits are "another way of pleading an action against an entity of which an officer is an agent"). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

To sue under § 1983, Defendants Schnell, Erickson, and Bolin—and therefore, Minnesota—must be considered "person[s]." *See* 42 U.S.C. § 1983 ("Every *person* who, under color of any statute . . . of any State . . . , subjects . . . any citizen . . . or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable . . . .") (emphasis added). While it is true that "state officials literally are persons[,]" because an official-capacity suit is "against the official's office[,]" the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). On this basis, Mr. Jackson's official-capacity claims against Defendants are barred because no Defendant is a "person" who can be liable under § 1983 in their official capacity.

## 5.    Qualified immunity.

Defendants argue that even if Mr. Jackson's First Amended Complaint properly pleaded claims for relief, they are entitled to qualified immunity on his induvial capacity claims. "To succeed on a motion to dismiss a § 1983 claim on qualified immunity grounds, [Defendants] must show [they are] 'entitled to qualified immunity on the face of the

complaint.'" *Putman v. City of Minneapolis*, No. 22-cv-1369 (KMM/DTS), 2022 WL 3107733, at *1 (D. Minn. Aug. 4, 2022) (citing *Stanley v. Finnegan*, 899 F.3d 623 (8th Cir. 2018). Because Mr. Jackson's First Amended Complaint fails to allege any facts sufficient to state a plausible claim to relief, there are insufficient facts to even begin a qualified immunity analysis and the Court thus declines to decide whether Defendants are entitled to qualified immunity on Mr. Jackson's individual capacity claims. *Id.*

Accordingly, based on all the above, the Court recommends that Defendants' Motion to Dismiss (Doc. 45) be granted, and Mr. Jackson's First Amended Complaint (Doc. 32) be dismissed in its entirety with prejudice.

## IV.    MR. JACKSON'S MOTION REQUESTING THAT THE COURT REFER THIS CASE TO THE DEPARTMENT OF JUSTICE FOR CRIMINAL PROCEDURES IS DENIED.

Finally, the Court addresses Mr. Jackson's Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures in which he asks the Court to refer this civil case to the Department of Justice for criminal prosecution. (Doc. 40.) The Court lacks the authority to initiate criminal prosecutions, and in any event, Mr. Jackson's First Amended Complaint fails to raise any factual basis for referring it for prosecution. The decision whether to file criminal charges against an individual lies within a prosecutor's discretion, not the Court's. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." (cleaned up)); *see also United States v. Bachelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). Accordingly,

Mr. Jackson's Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures is denied.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1.    Plaintiff Dejaun Jackson's Motion to Amend or Supplement Pleadings (Doc. 73) be **DENIED**;

2.    Mr. Jackson's Motion for Preliminary Injunction (Doc. 74) be **DENIED**;

3.    Defendants' Motion to Dismiss (Doc. 45) be **GRANTED**; and

4.    Mr. Jackson's Amended Complaint (Doc. 32) be **DISMISSED** in its entirety with prejudice.

## ORDER

Additionally, based on all the files, records, and proceedings in this case, **IT IS ORDERED** that:

1.    Mr. Jackson's Motion Requesting that the Court Refer This Case to the Department of Justice for Criminal Procedures (Doc. 40) is **DENIED**.

Date: January 13, 2025                         *s/Douglas L. Micko*
                                               DOUGLAS L. MICKO
                                               United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).